## No. 27349

**Paul E. Bushnell v. Arthur Nathaniel Sapp and The City of Colorado Springs, a Colorado Municipality**

(571 P.2d 1100)

Decided November 21, 1977.

Ronald A. Peterson, for plaintiff-appellant.

Kane, Donley & Wills, Lee R. Wills, Hayden Kane, for defendants-appellees.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

■ This case presents a number of constitutional attacks upon the Colorado Auto Accident Reparations Act. Section 10-4-701 *et seq.*, C.R.S. 1973 (1976 Supp.). This "no-fault" insurance statute has completely restructured the compensation system for victims of automobile accidents occurring on or after April 1, 1974. We find no constitutional infirmities in the structure or application of the Act and affirm the trial court's dismissal of appellant's complaint.

Appellant brought a negligence action against a police officer and the City of Colorado Springs in El Paso County District Court on April 16, 1976. He claims that on August 2, 1975, a Colorado Springs police patrol wagon[1] collided with a bicycle he was riding and that he incurred $236 in medical expenses for his resulting injuries. He also claims that he has sustained great physical and mental pain and suffering, for which he seeks $25,000.

The court dismissed the complaint for failure to state a claim upon which relief could be granted. The court found as follows:

"1. Assuming that the police patrol car driven by Defendant Sapp and owned by Defendant City is held not to be a 'Patrol wagon', and therefore not exempt under the applicable regulations, then Plaintiff must pursue his direct benefits under the act, since he has not met the $500.00

---

[1]The vehicle driven by the patrolman was variously described in the pleadings and briefs in the trial court as a "patrol wagon," a "patrol car," and a "squad car." The parties did not appear to attach significance to this differentiation. The trial court in its findings ruled that it made no difference to the outcome of the case.

threshold which would entitle him to maintain a separate tort action.

"2. Assuming, however, that the police patrol car is held to be a 'Patrol wagon' within the meaning of the regulations, and is therefore exempt from the requirements of the statute, Plaintiff would have the right to maintain a direct tort action but for the fact that the City does provide benefits equivalent to those required by the statute. Because of that circumstance, Plaintiff must also pursue his direct benefits under the statute. The Court reaches this conclusion from its reading of 10-4-715(1)(a), C.R.S. 1973. The court further concludes that its construction of the statute does not bring about an unconstitutional result."

## I.

■ The Colorado Auto Accident Reparations Act is a "no-fault" statute applying to automobile accidents occurring on or after April 1, 1974. Section 10-4-701 *et seq.*, C.R.S. 1973 (1976 Supp.). It establishes a system of direct benefit insurance to compensate victims without regard to fault. No-fault insurance coverage is required of the owner of every "motor vehicle" as defined by the Act. Section 10-4-705(1). "Motor vehicle" is defined as

"* * * any vehicle of a type required to be registered and licensed under the laws of this state and which is designed to be propelled by an engine or motor; except that this term does not include motorcycles, motorscooters, minibikes, snowmobiles, bicycles with motor or engine attached, or any vehicle designed primarily for use off the road or on rails." Section 10-4-703(7), C.R.S. 1973.

Certain other vehicles are not required to be registered and are thus not covered by the Act: vehicles owned by the United States, vehicles owned by the state of Colorado or any agency or institution thereof, all fire vehicles, and all police ambulances and patrol wagons. Section 42-3-103(3), C.R.S. 1973.

■ The Act provides that a person who is entitled to receive direct benefits under the Act cannot maintain a tort action for damages, unless he meets one of the threshold requirements. Section 10-4-714(1), C.R.S. 1973. Those requirements are:

"(1)

"(a) Death;

"(b) Dismemberment;

"(c) Permanent Disability;

"(d) Permanent Disfigurement;

"(e) Reasonable need for services of the type described in section 10-4-706(1)(b) and (1)(c) [primarily medical and rehabilitative expenses] having a reasonable value in excess of five hundred dollars * * *;

"(f) Loss of earnings and loss of earning capacity extending beyond the fifty-two week period provided in section 10-4-706(1)(d) and not compensated by an applicable complying policy" Section 10-4-714(1),

C.R.S. 1973.

If a threshold requirement is reached, a tort action can be brought and the traditional tort rules for damages are applicable.

## II.

Assuming, as appellant alleged in his complaint, that he collided with a police "patrol wagon," it did not need to be registered or to be covered by a complying no-fault policy. Section 42-3-103(3), C.R.S. 1973. Normally, then, the appellant would not be limited by the Act and could maintain a tort action no matter how small his damages. The City of Colorado Springs, however, had provided insurance coverage equivalent to that under the Act. In such case, section 10-4-715(1)(a) of the no-fault Act is pertinent:

"(1) Nothing in this part 7 shall be construed to limit the right to maintain an action in tort by either a provider of direct benefits under section 10-4-706(1)(b) to (1)(e) or by a person who has been injured or damaged as a result of an automobile accident against an alleged tort-feasor where such alleged tort-feasor was either:

"(a) Using or operating a motor vehicle not required to be covered under the provisions of this part 7, *unless coverage equivalent to that required under section 10-4-706 was, at the time of occurrence of the alleged tortious conduct, actually provided for the benefit of persons for whom benefits are provided under section 10-4-707*; or * * *." (Emphasis added.)

■ It is clear that subsection (a) limits the right to maintain a tort lawsuit when the alleged tort-feasor has coverage equivalent to that under the Act. This language implicitly requires the injured person to pursue those direct benefits unless he is able to meet one of the Act's threshold requirements for a tort action. Since appellant's medical expenses were less than $500, he has conceded that he cannot meet any of the threshold requirements. Thus, the trial court properly ruled that his exclusive remedy is for direct benefits under the coverage provided by the City of Colorado Springs.

Inasmuch as appellant's exclusive remedy is under the no-fault Act, we now consider his constitutional attacks upon the Act itself.[2]

## III.

■ Appellant contends that an interpretation permitting Colorado Springs to have the option of bringing its police patrol cars within no-fault

---

[2]The following nine jurisdictions have found their no-fault automobile insurance Acts to be constitutional: *Gentile v. Altermatt*, 169 Conn. 267, 363 A.2d 1; *Lasky v. State Farm Insurance Co.*, 296 So.2d 9 (Fla.); *Manzanares v. Bell*, 214 Kan. 589, 522 P.2d 1291; *Fann v. McGuffey*, 534 S.W.2d 770 (Ky.); *Pinnick v. Cleary*, 360 Mass. 1, 271 N.E.2d 592; *Opinion of the Justices*, 113 N.H. 205, 304 A.2d 881; *Rybeck v. Amica Mutual Insurance Co.*, 141 N.J. Super. 481, 358 A.2d 828; *Montgomery v. Daniels*, 38 N.Y.2d 41, 340 N.E.2d 444, 378 N.Y.S.2d 1; *Singer v. Sheppard*, 464 Pa. 387, 346 A.2d 897. *Contra, Grace v. Howlett*, 51 Ill.2d 478, 283 N.E.2d 474.

coverage is constitutionally defective in four respects. These defects are characterized as: (A) an unlawful delegation of legislative authority; (B) special legislation; (C) a due process violation; and (D) a denial of equal protection rights. We start from the premise that a statute is presumed to be constitutional unless it is clearly shown otherwise. *Zaba v. Motor Vehicle Division, Department of Revenue*, 183 Colo. 335, 516 P.2d 634.

### A. *Unlawful Delegation*

In our view, the legislature has not made an unconstitutional delegation of its legislative power. It has enacted a comprehensive and self-contained statute which gives a few non-covered parties the option to be covered by it. The City of Colorado Springs, the non-covered party here, has no power to vary the benefits, change the threshold requirements, or modify the Act in any respect whatsoever. The City's sole choice is whether to bring its city police patrol wagons under no-fault coverage. This is not a case where parties are delegated authority to set prices or terms of legislation. *Cf. Olin Mathieson Chemical Corp. v. Francis*, 134 Colo. 160, 301 P.2d 139.

It is permissible for the legislature to trigger the operative effect of a law on the happening of a certain future event. *Board of County Commissioners of Pueblo County v. Smith*, 22 Colo. 534, 45 P. 357. *See generally* 16 *Am. Jur. 2d Constitutional Law* § 258; 16 *C.J.S. Constitutional Law* § 141. The future event here is the election by a non-covered party to be covered by the Act. Especially in view of the comprehensive detailed nature of the statute, this is a proper event upon which to predicate its operation.

### B. *Special Legislation*

Appellant contends that the no-fault Act is special legislation and violates Article V, Section 25 of the Colorado Constitution. We do not agree. A statute is not special legislation when it is general and uniform in its operation upon all those in like situation. *O'Quinn v. Walt Disney Productions, Inc.*, 177 Colo. 190, 493 P.2d 344; *People ex rel. Johnson v. Earl*, 42 Colo. 238, 94 P. 294. The no-fault Act is geared to the existing automobile registration law which exempts state, federal, fire, and police vehicles from registration. Section 42-3-103(3), C.R.S. 1973. Certain groups are not singled out for special treatment — rather, the reasonable and legitimate distinctions already made in the state automobile registration laws are recognized and accomodated.

### C. *Due Process*

Appellant erroneously argues that the inclusion and exclusion of vehicles from the Act's coverage denies him his substantive due process rights. *Colo. Const.* Art. II, Sec. 25; *U.S. Const.* amend. XIV.

The Act was enacted pursuant to the police power of the state. It is fundamental that the exercise of the police power must not be arbitrary or unreasonable, and it must bear a reasonable relation to a

permissible legislative objective. *U.S. Disposal Systems v. City of Northglenn*, 193 Colo. 277, 567 P.2d 365.

Appellant does not dispute that the Act is directed toward proper legislative objectives: the regulation of the use of public highways and the promotion of the health, safety and public welfare of the citizens. *Zaba v. Motor Vehicle Division, Department of Revenue*, 183 Colo. 335, 516 P.2d 634. As part of the regulatory scheme, the legislature can prescribe a method for prompt and sufficient compensation for victims of accidents caused on those highways. *Manzanares v. Bell*, 214 Kan. 589, 522 P.2d 1291. Indeed, the Act's declared purposes are to "avoid inadequate compensation to victims of automobile accidents," and to require insurance coverage capable of "providing benefits to persons occupying such vehicles and to persons injured in accidents involving such vehicles." Section 10-4-702, C.R.S. 1973.

That the Act does exclude state, federal, police and fire vehicles from mandatory no-fault coverage does not, in our view, render arbitrary or unreasonable the method chosen by the legislature to achieve its objective. The legislature may reasonably have determined that inadequate insurance coverage and compensation is much less of a problem with certain vehicles owned and operated by governmental entities than with those owned and operated by private citizens. Moreover, the legislature need not comprehensively remedy all problems at once — it is entitled to proceed one step at a time. *Williamson v. Lee Optical Co.*, 348 U.S. 483, 75 S.Ct. 461, 99 L.Ed. 563. We are not persuaded by appellant's argument in this respect.

### D. *Equal Protection*

We do not agree with appellant's contention that the exclusions from no-fault coverage violate his equal protection rights. Since there are no suspect classifications or fundamental interests at stake, the issue is whether the differences in classification bear a rational relationship to legitimate state objectives. *Mosgrove v. Town of Federal Heights*, 190 Colo. 1, 543 P.2d 715. Classes can certainly be treated differently, so long as this unequal treatment is based on reasonable differences. *Sweeney v. Summers*, 194 Colo. 149, 571 P.2d 1067; *People v. Gould*, 188 Colo. 113, 532 P.2d 953.

There are two classes of autmobile accident victims: those who collide with vehicles required to have no-fault coverage and those who collide with vehicles given the option of providing no-fault coverage. Appellant is in the latter group because police patrol wagons are not required to have no-fault coverage. If there is any state of facts that reasonably may be conceived to justify the distinction between classes, the Act's exclusions must be sustained. *McGowan v. Maryland*, 366 U.S. 420, 81 S.Ct. 1101, 6 L.Ed.2d 393; *Harding v. Industrial Commission*, 183 Colo. 52, 515 P.2d 95.

We do not view the exclusion of federal, state, fire, and police vehicles to be arbitrary. Again, the legislature may reasonably have concluded that the victims injured in accidents involving those classes of vehicles are normally adequately protected in the pursuit of their damage claims. *See* section 24-10-106, C.R.S. 1973 (relating to governmental immunity) and section 42-4-106, C.R.S. 1973 (relating to obedience of traffic regulations by operators of publicly owned vehicles). In any case, we find no unreasonable or arbitrary classification in the Act.

## IV.

Appellant next contends that the threshold requirements necessary to maintain a tort action violate his due process and equal protection rights. He specifically complains that his cause of action for pain and suffering has been extinguished because he cannot reach the $500 medical expense threshold necessary for a tort lawsuit. Indeed, in a tort action, pain and suffering are normally compensable parts of general tort damages. *French v. Deane*, 19 Colo. 504, 36 P. 609; *Colorado Springs Co. v. Marr*, 26 Colo. App. 48, 141 P. 142. By not establishing a separate threshold for pain and suffering, the legislature has prevented persons situated like appellant from recovering for pain and suffering.

As we understand appellant's argument, he asserts two due process objections to the threshold requirements: (1) that the thresholds chosen do not bear a rational relation to the purposes sought to be achieved; and (2) that on applying the thresholds to appellant's case, the legislature has arbitrarily limited his recovery for pain and suffering damages.

Addressing the first objection, we find that the threshold requirements chosen by the general assembly do relate to the legitimate public purposes already considered. Although the legislature designed the Act to provide speedy and adequate compensation to accident victims, it did not intend to preclude tort actions for serious injuries. Certain of the threshold requirements — such as death, dismemberment, or permanent disability — are obviously of a serious nature. Similarly, the $500 medical expense threshold, based on "reasonable value," appears to be a rational figure for differentiating major from minor injuries. We recognize that the legislature could well have drawn the line at a different dollar figure. Nonetheless, considering the high cost of medical services today, this figure will undoubtedly permit litigation of some minor injuries as well as major ones. A number of courts have sustained this $500 threshold amount, *e.g., Manzanares v. Bell*, 214 Kan. 589, 522 P.2d 1291; *Opinion of the Justices*, 113 N.H. 205, 304 A.2d 881, while one court has permitted a $1,000 figure, *Lasky v. State Farm Insurance Co.*, 296 So. 2d 9 (Fla.). We cannot say that the line chosen was arbitrary or unreasonable.

Appellant's second due process objection is that the legislature arbitrarily limited his damage claim for pain and suffering. On applying the threshold requirements to appellant's case, we do not find a

deprivation of his due process rights. There is no separate threshold for pain and suffering. It is implicit that the legislature recognized that pain and suffering are not objectively measurable. It could have concluded that if a separate threshold had been established, then the Act could be simply and effectively circumvented by claiming damages for pain and suffering in a greater amount than a statutory threshold.[3] Since the other thresholds bear a relationship to pain and suffering, and in view of the subjective nature of pain and suffering, we do not consider that it is arbitrary or unreasonable to limit recovery for pain and suffering to situations where one of these thresholds is reached.

Appellant also contends that the threshold requirements of the Act deny him equal protection. The Act creates two classes of injured parties who may claim damages for pain and suffering: those who can recover because they reach a threshold level and those who cannot recover because they are unable to reach a threshold level. The relevant inquiry again is whether this difference in treatment is rationally related to a permissible state objective. *Mosgrove v. Town of Federal Heights*, 190 Colo. 1, 543 P.2d 715. It is clear that one of the legislature's objectives in the statutory scheme was to eliminate minor claims for pain and suffering.

Where and how to draw the line between major and minor claims of this nature is for the legislature to determine, and not the courts. *Louisville Gas & Elec. Co. v. Coleman*, 277 U.S. 32, 48 S.Ct. 423, 72 L.Ed. 770; *Montgomery v. Daniels*, 38 N.Y.2d 41, 340 N.E.2d 444, 378 N.Y.S.2d 1. The general assembly apparently concluded that the effective administration of the Act would be promoted by not establishing a separate threshold for claims for pain and suffering, but rather by tying such claims to the particular threshold delineated in the Act. We quote with approval the New York Court of Appeals:

"* * * True it may be that certain injuries not listed might well have been included within the class of serious injuries or that the threshold amount might more wisely have been set at $400 or $600. But such decisions are not of determinative concern to this court. 'Every line drawn by a legislature leaves out some that might well have been included. That exercise of discretion, however, is a legislative, not a judicial function. * * *'" *Montgomery v. Daniels, supra.*

---

[3]On this point, we approve the reasoning of the Massachusetts Supreme Judicial Court:
"* * * [T]he minor claims had to be eliminated according to objective, easily applicable rules. If the rules were themselves subjective — for instance, keyed to the dollar amount of pain and suffering involved — the perceived evils would continue. Courts might well be clogged with claimants alleging damages over the required figure, and there would remain the incentive for the injured party to exaggerate his claim in order to prompt a generous settlement from an insurer which did not feel the claim was worth the expense of a contest." *Pinnick v. Cleary*, 360 Mass. 1, 271 N.E.2d 592.

We do not find those criteria here to be unreasonable. Nor do we find the resulting classifications to be arbitary or irrational. Perfection in classifications has never been constitutionally required and the fact that some inequity may result is not enough to invalidate a legislative classification based on rational distinctions. *Dandridge v. Williams*, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491; *Metropolis Theatre Co. v. Chicago*, 228 U.S. 61, 33 S.Ct. 441, 57 L.Ed. 730; *Lindsley v. Natural Carbonic Gas Co.*, 220 U.S. 61, 31 S.Ct. 337, 55 L.Ed. 369; *Pinnick v. Cleary*, 360 Mass. 1, 271 N.E.2d 592; *Montgomery v. Daniels, supra.*

For the foregoing reasons, we reject appellant's equal protection argument.

## V.

Appellant claims that the no-fault Act is unconstitutional because it violates his guarantee of "a speedy remedy afforded for every injury to person." *Colo. Const.* Art. II, Sec. 6. Since the Act takes away appellant's tort action for pain and suffering because his medical expenses are less than $500, appellant argues that the legislature has denied him his constitutional right to a remedy.

The legislature indisputably has the power to extinguish a common law action in tort so long as it does not violate any constitutional guarantee. As the United States Supreme Court has long recognized: "A person has no property, no vested interest, in any rule of the common law." *Munn v. Illinois*, 94 U.S. 113, 24 L.Ed. 77. Our court has previously sustained the legislature when it abolished civil actions for breach of promise to marry, alienation of affections, criminal conversation, and seduction, *Goldberg v. Musim*, 162 Colo. 461, 427 P.2d 698, and also when it abolished the common law right of an automobile guest to recover from the driver, *Vogts v. Guerrette*, 142 Colo. 527, 351 P.2d 851.[4] The court has also affirmed the power of the general assembly to effect sweeping statutory changes in the area of workmen's compensation. *O'Quinn v. Walt Disney Productions, Inc.*, 177 Colo. 190, 493 P.2d 344; *Finn v. Industrial Commission*, 165 Colo. 106, 437 P.2d 542.

No constitutional right of appellant's has been violated by this legislation. We decline appellant's invitation to overrule our line of cases holding that Article II, Section 6 of the Colorado Constitution is not a limitation on the legislative branch of government. *Vogts v. Guerrette, supra*; *Noakes v. Gaiser*, 136 Colo. 73, 315 P.2d 183. We do not reach the issue as to whether the legislature must enact an adequate substitute for the common law right it has affected because we find that this statutory scheme, taken as a whole, is a reasonable substitute for the traditional tort

---

[4]The Guest Statute, section 42-9-101, C.R.S. 1973, was subsequently repealed, effective April 9, 1975. Colo. Sess. Laws 1975, ch. 379, § 1 at 1568.

284

remedies. *Accord, Pinnick v. Cleary*, 360 Mass. 1, 271 N.E. 2d 592; *Rybeck v. Amica Mutual Insurance Co.*, 141 N.J. Super. 481, 358 A.2d 828.

In summary, we detect no constitutional infirmities in the Colorado Auto Accident Reparations Act.

The judgment is affirmed.

MR. CHIEF JUSTICE PRINGLE dissents.

MR. JUSTICE CARRIGAN does not participate.