Public Utilities Commission,
No. 5865.

### PETITION OF BOSTON & MAINE CORPORATION.

Argued February 5, 1969.
Decided March 20, 1969.

*John J. Nee* and *Chester A. Prior* of Massachusetts, *Wiggin, Nourie, Sundeen, Nassikas & Pingree* and *W. Wright Danenbarger* (*Mr. Danenbarger* orally), for the Boston & Maine Corporation.

*George S. Pappagianis,* Attorney General and *W. Michael Dunn,* Attorney (*Mr. Dunn* orally), for the State.

GRIFFITH, J. This is an appeal from an order of the Public Utilities Commission made in compliance with the provisions of chapter 241 of the Laws of 1967. This chapter directed the Commission, the Boston & Maine Railroad and the city of Rochester to reopen the Boston & Maine Railroad crossing at Autumn Street in Rochester which had been closed by order of the Commission on April 29, 1960. The plaintiff railroad claims

that chapter 241, Laws of 1967 violates the provisions of the State Constitution and is therefore invalid.

On February 4, 1960 the Boston & Maine Corporation and the city of Rochester jointly petitioned the Public Utilities Commission reciting that certain land in the vicinity of the Autumn Street crossing had been taken from the railroad for highway purposes by the city, that damages for the taking and relocation of tracks had been paid to the railroad, and that the highway project contemplated the closing of the Autumn Street crossing. The petition requested the Commission after due notice and hearing to authorize the closing of the Autumn Street crossing in Rochester.

On February 24, 1960 a hearing was held by the Commission joined by the Commissioner of Motor Vehicles and a representative of the Commissioner of Public Works sitting in an advisory capacity. The report of the three Commissioners reviewed in detail the evidence presented at the hearing and on April 29, 1960 they issued an order authorizing the closing of the Autumn Street crossing.

The pertinent section of chapter 241 of the Laws of 1967 reads as follows: "241:1 REOPENING OF RAILROAD CROSSING. The public utilities commission, the Boston & Maine Railroad and the city of Rochester are hereby directed to reopen the Boston & Maine Railroad Crossing at Autumn Street in Rochester which was closed April 29, 1960 by order number 7470 of the commission. Any right of way over land owned by the city of Rochester needed for access to or exit from this crossing shall be conveyed or dedicated to such use by the city without any payment therefor to the city."

On August 15, 1968 the Public Utilities Commission without notice or hearing ordered the Boston & Maine Corporation to reopen the Autumn Street crossing stating that the order was pursuant to the mandate of chapter 241, Laws of 1967. On September 16, 1968 the Boston & Maine's petition for rehearing on this order was denied.

We agree with the defendant that the courts are not concerned with whether a statute is "wise, reasonable, or expedient" (*State* v. *Marshall*, 64 N. H. 549, 550; *State* v. *Paille*, 90 N. H. 347), and that "courts will never declare a statute void unless the nullity and invalidity of the act are placed, in their judgment, beyond all reasonable doubt." *Rich* v. *Flanders*, 39 N. H. 304,

312. However, if upon examination of the statute, there is a clear conflict with the Constitution the court must declare the statute inoperative "because the Constitution, and not the statute, is the paramount law." *Perry* v. *Keene,* 56 N. H. 514, 530.

If the order of April 29, 1960 was a judgment then the act of the Legislature setting it aside would be a violation of Pt. I, *Art.* 37th of the Constitution relating to separation of powers. The existence of any conflict with the Constitution therefore turns on whether the order was judicial, legislative or administrative.

RSA 362:2 vests the Public Utilities Commission with jurisdiction over railroads and by RSA 362:3 the term railroads is defined as including grade crossings. RSA 373:22 provides for a hearing upon a petition to close any public grade crossing and authorizes the Commission to order the closing if they are of the opinion that the public good so requires. RSA 373:23 provides for the attendance of the advisory personnel who assisted at the hearing preceding the Commission's order of April 29, 1960. RSA 373:10 and RSA 365:22 provided a means by which the Commission on petition of any interested person could be required to reconsider its order closing the crossing. If the crossing were reopened the Commission was required to apportion the cost between the parties in interest in accordance with RSA 373:3, 7, 10. RSA 373:8 provides for appeal to the Superior Court from an order apportioning costs and RSA ch. 541 provides for appeals of decisions directly to the Supreme Court upon a claim that the order was unlawful.

The establishment of the Public Utilities Commission was for the purpose of providing comprehensive provisions for the establishment and control of public utilities in the state. "It created the public service commission [now public utilities commission] as a state tribunal, imposing upon it important judicial duties and endowing it with large administrative and supervisory powers." *Parker-Young Co.* v. *State,* 83 N. H. 551, 556; *Lorenz* v. *Stearns,* 85 N. H. 494; *State* v. *New Hampshire Gas & Electric Co.,* 86 N. H. 16.

The growth of administrative boards with dual governmental functions has long been accepted as not inconsistent with the provisions of our Constitution requiring separation of the legislative, executive and judicial powers. N. H. Constitution, Pt. I, *Art.* 37th; *Boody* v. *Watson,* 64 N. H. 162; *American Motorists*

*Ins. Co.* v. *Garage*, 86 N. H. 362; *Welch Co.* v. *State*, 89 N. H. 428, 437. Certain administrative duties have been exercised by the judiciary from earliest times and are not now open to question. *Attorney General* v. *Morin*, 93 N. H. 40; *Opinion of the Justices*, 102 N. H. 195. However, the courts may not be required to undertake administrative duties of an extensive nature belonging to the executive branch of the government (*Opinion of the Justices*, 85 N. H. 562); nor may an administrative board be charged with determining disputes between private individuals unrelated to its regulatory functions. *Opinion of the Justices*, 87 N. H. 492.

Implicit in the dual character of administrative boards is that some of their acts are within the legislative or administrative area and others have the effect of a judgment. "The judicial quality inherent in a finding or verdict by such a body does not necessarily signify a justiciable inquiry." *Cloutier* v. *State Milk Control Board*, 92 N. H. 199, 203. When in fact the decision of a board affects only public matters essentially legislative then the Legislature may properly override their decision. *Farnum's Petition*, 51 N. H. 376. If private rights are affected by the board's decision the decision is a judicial one. A valid administrative judgment made by an administrative tribunal properly created by the Legislature has "the same force of obligation and finality as a judicial one." *Opinion of the Justices*, 87 N. H. 492, 494; *Petition of N. H. Gas & Electric Co.*, 88 N. H. 50; *Interstate Bridge Authority* v. *Ham Estate*, 92 N. H. 277; *Pomponio* v. *State*, 106 N. H. 273, 275.

The order of April 29, 1960 was made after notice and hearing. It was made in accordance with the established procedures set up by the Legislature to safeguard the rights of all parties. It required the parties to make substantial changes in the area of the crossing. This the parties did in reliance on the order and the existing law. They were entitled to rely upon the public utilities statutes that they would not be required to reopen the crossing without notice, hearing and just reimbursement for expenses incurred in any reopening. The act in question provided no method of assessing damages and whether or not there was notice and opportunity to be heard prior to its passage does not appear.

We hold that the decision of the Commission on April 29, 1960 was a judicial decision vesting in the plaintiff rights of

which it cannot now be deprived by this legislative act. Chapter 241, Laws of 1967 violates Article 37th of the Bill of Rights and is invalid. *Merrill* v. *Sherburne,* 1 N. H. 199; *Towle* v. *Eastern Railroad,* 18 N. H. 547, 551; *Clark* v. *Clark,* 10 N. H. 380. "It is not a legislative, but a judicial act . . . . The act is in this respect . . . beyond the scope of legislative authority, and in violation of the bill of rights [*Art.* 37th]. *Railroad Co.* v. *Elliot,* 52 N. H. 387, 393, 400.

In view of the result reached we have not considered the arguments of the plaintiff directing our attention to other possible conflicts between the act and the Constitution.

*Appeal sustained; order vacated.*

LAMPRON, J., did not sit; GRIMES, J., concurred in the result; the others concurred.